UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNIE WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 6828 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| GHALIAH OBAISI, Independent Executor for the Estate | ) | |
| of Saleh Obaisi, and MATTHEW RANZER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Johnnie Woods, an Illinois prisoner, brought this *pro se* 42 U.S.C. § 1983 suit against Dr.
Saleh Obaisi and Dr. Matthew Ranzer, alleging deliberate indifference to his serious medical
needs in violation of the Eighth Amendment. Doc. 53. Ranzer moves for summary judgment.
Doc. 143. The motion is granted.

### Background

Consistent with Local Rule 56.1(a)(3), Ranzer filed a statement of undisputed facts along
with his summary judgment motion. Doc. 145. Local Rule 56.1(b)(3)(B) required Woods to file
"a concise response to [Ranzer's] statement … contain[ing] … a response to each numbered
paragraph in [Ranzer's] statement, including, in the case of any disagreement, specific references
to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R.
56.1(b)(3)(B). Although Woods did not respond to every paragraph of Ranzer's Local Rule
56.1(a)(3) statement, his response contains numbered paragraphs that reference and correspond
to the statement, Doc. 155, so the court will consider the Local Rule 56.1(b)(3)(B) response to
the extent it is adequately supported by specific references to the record. Where Ranzer's factual
assertions are properly supported by the record material he cites and not properly disputed by

Woods, the court will deem those assertions undisputed. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("[A]ll material facts set forth in the [Local Rule 56.1(a)(3) statement … will be deemed to be admitted unless controverted by the statement of the opposing party."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("The non-moving party's failure … to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed."). Because Woods is *pro se*, the court will construe his affidavit, Doc. 156, as a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Johnson v. City of Chicago*, 2016 WL 5341810, at *2 (N.D. Ill. Sept. 23, 2016).

The court recites the facts as favorably to Woods as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

From 2008 through 2016, while incarcerated, Woods sought treatment for ongoing left heel pain. Doc. 145 at ¶¶ 9-15. After various treatments did not eliminate his pain, *id.* at ¶¶ 13-15, prison medical providers referred him to the University of Illinois Medical Center ("UIMC"), where Ranzer, a board-certified plastic surgeon, works as an Assistant Professor of Surgery, *id.* at ¶¶ 2, 16, 87. Ranzer is not employed by Wexford Health Sources or the Illinois Department of Corrections. *Id.* at ¶ 86. (Woods disputes this fact, asserting that Wexford has a contractual

agreement with UIMC, Doc. 155 at ¶ 48, but he cites no evidence to support that assertion. *See Friend v. Valley View Cmty. Unit Sch. Dist.*, 789 F.3d 707, 710-11 (7th Cir. 2015).)

At an initial visit on May 6, 2016, Ranzer took a history, examined Woods, and discussed a plan for surgery. Doc. 145 at ¶ 17. Ranzer performed surgery on Woods on June 9, 2016. *Id.* at ¶ 26. At a pre-surgery meeting, Ranzer discussed some of the risks. *Id.* at ¶¶ 21-25. Although Ranzer maintains that he specifically discussed the possible "need for revision surgery," *id.* at ¶ 21, Woods avers that Ranzer spoke only of the risks outlined in the consent form, which do not (according to Woods, whose account is credited at this stage) reference the risk that a second, revision surgery would be necessary. Doc. 155 at ¶¶ 4, 8-11; Doc. 156 at ¶ 18. Woods signed that consent form, which states in pertinent part: "The nature and purpose of the operations or procedure, possible alternative methods of treatment, the risks involved, the possible consequences, and the possibility of complications have been explained to me." Doc. 145 at ¶¶ 23-24.

The surgery Ranzer performed on Woods's left heel entailed excising the scar tissue and transferring adjacent tissue. *Id.* at ¶¶ 26-27. The scar extended down to the calcaneal bone, which was exposed as part of the excision. *Id.* at ¶ 27. Ranzer attempted a reconstruction with bilateral flaps, but the calcaneal bone remained exposed, as Woods's skin did not have the laxity to close the wound. *Ibid.* Ranzer therefore placed Integra, a two-layer skin regeneration system, over the exposed bone. *Id.* at ¶¶ 26-27.

Woods saw Ranzer for a post-operative visit on June 17, 2016. *Id.* at ¶ 28. Woods sought a different surgeon, or another opinion, but did not get one. Doc. 156 at ¶¶ 5-6. Although Woods did not want to continue seeing Ranzer, he felt he had to because of his exposed heel bone. *Id.* at ¶ 6.

Woods had two more post-operative visits with Ranzer, during which a plan was formulated to treat the exposed bone. Doc. 145 at ¶¶ 30-37. At the third visit, on July 22, 2016, Ranzer documented that the plan was to proceed with a "reverse sural artery flap" surgery to cover the heel, *id*. at ¶¶ 33-37, and Woods agreed to that procedure, *id*. at ¶ 37; Doc. 155 at ¶ 19. Ranzer stated that the sural flap would be the most "prudent" surgery. Doc. 156 at ¶ 7.

On August 11, 2016, Ranzer and another physician saw Woods to take an admitting history and conduct a physical examination. Doc. 145 at ¶¶ 38-39. Ranzer examined the wound and thought it showed great improvement. *Id*. at ¶ 40. Given his examination, Ranzer decided to perform a full thickness skin graft, with skin from the groin crease, rather than the reverse sural artery flap. *Id*. at ¶ 85. Ranzer avers that the full thickness skin graft performed that day was the most prudent surgery. *Id*. at ¶ 82. He made that decision based on the improved condition of Woods's heel and the fact that the reverse sural artery flap has a low success rate. *Id*. at ¶ 85. Ranzer also believed that the full thickness skin graft was less invasive and less risky than the reverse sural flap. *Id*. at ¶ 82.

Neither Ranzer nor another doctor discussed with Woods the plan to change the type of surgery that would be performed. Doc. 155 at ¶ 21. (Although Ranzer avers that he in fact discussed this with Woods, Doc. 145 at ¶ 42, the court at this stage must credit Woods's averment to the contrary. *See Johnson*, 892 F.3d at 893.) Ranzer read to Woods, and Woods signed, an informed consent document for a sural flap procedure. Doc. 145 at ¶¶ 42-44; Doc. 155 at ¶¶ 8, 23-24. (Ranzer maintains that Woods consented to the full thickness skin graft, Doc. 145 at ¶ 42, but the court credits Woods's account, Doc. 155 at ¶ 24, at this stage.) Had Ranzer or another doctor told Woods that he was going to receive a different surgery, Woods would have refused because he had agreed to the sural flap procedure only. *Id*. at ¶ 24. Woods believes

4

that the reverse sural flap surgery would have been the best surgery for preventing nerve damage. Doc. 155 at ¶¶ 39, 42, 46.

The surgery took place and Ranzer successfully completed the full-thickness skin graft. Doc. 145 at ¶ 46. On August 12, 2016, Woods woke to a nurse asking to change the dressing on his inner thigh. Doc. 156 at ¶ 9. Medical students told Woods that a graft had been performed from that location. *Id*. at ¶ 10. The next day, Woods asked Ranzer why he had performed surgery near the groin area. *Id*. at ¶ 11. Woods became loud and Ranzer left the room. *Id*. at ¶ 12. Woods remained hospitalized at UIMC from August 11-16, 2016. Doc. 145 at ¶ 47. During that time, several medical providers visited and evaluated him daily and his pain was well-controlled. *Id*. at ¶¶ 48-50.

Woods had a post-operative visit on August 19, 2016. *Id*. at ¶ 51. Ranzer examined Woods, who was told that the graft and groin crease were healing nicely. *Id*. at ¶¶ 52-53. Woods saw Ranzer again on October 28, 2016. *Id*. at ¶ 54. Woods could walk but experienced numbness in part of his foot, *id*. at ¶¶ 55-56, which Ranzer suggested would go away with physical therapy, Doc. 156 at ¶ 15. Woods saw Ranzer for a third post-operative visit and reported walking without pain but a lack of sensation in parts of his foot. Doc. 145 at ¶¶ 58-60.

Since then, Woods's numbness has worsened, and he drags his foot more. Doc. 156 at ¶¶ 15-16. Woods does not have pain and can flex and extend his foot and walk without assistive devices. Doc. 145 at ¶¶ 61-62, 69-70. But his foot loses feeling and locks up each day. *Id*. at ¶¶ 64-67; Doc. 155 at ¶ 31. He also takes medication for nerve damage. Doc. 155 at ¶ 29.

Ranzer avers that his decisionmaking when treating Woods was a product of his own judgment. Doc. 145 at ¶ 88. Woods asserts that Ranzer could still be held liable as a state actor, Doc. 155 at ¶ 50, but that is a legal argument, not a factual statement.

### Discussion

Woods brings claims only under § 1983 and none under state law.  Docs. 53, 155-157.
Ranzer seeks summary judgment on the ground that he is not a state actor for purposes of
§ 1983.  Doc. 144 at 10-14.

"[A] claim under § 1983 is tenable only if the defendants acted under color of state law—
in other words, if they are state actors."  *Gayman v. Principal Fin. Servs., Inc.*, 311 F.3d 851, 852
(7th Cir. 2002).  "Whether a medical provider is a state actor is a functional inquiry, focusing on
the relationship between the state, the medical provider, and the prisoner. … [M]edical providers
who have only an incidental or transitory relationship with the penal system generally are not
considered state actors."  *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 797-98 (7th Cir. 2014)
(citations and internal quotation marks omitted); *see also Rodriguez v. Plymouth Ambulance
Serv.*, 577 F.3d 816, 825 (7th Cir. 2009) ("[O]ur focus must be on the particular *function* of the
medical care provider in the fulfillment of the state's obligation to provide health care to
incarcerated persons.").  In undertaking this inquiry, the court considers "the setting in which the
medical care is rendered," "the degree to which the work of the private medical provider is
controlled or influenced by the state," "the contractual relationship between the state and the
medical care provider," and whether the provider has a "direct, not an attenuated, relationship
with the prisoner-patient."  *Rodriguez*, 577 F.3d at 826-28.

In *Shields*, the prisoner plaintiff brought an Eighth Amendment deliberate indifference
claim against doctors employed by a university hospital.  746 F.3d at 785.  The Seventh Circuit
held that the plaintiff had not shown that the physicians were state actors for purposes of § 1983.
*Id*. at 797.  In so holding, the Seventh Circuit reasoned: "[T]here [was] no evidence that [the
defendant doctors] had a contract with Wexford or the prison, that their practices focused on

6

treating inmates, or even that they regularly treated inmates as part of their practices. Standing alone, merely having treated inmates before [did] not establish the kind of close relationship between the doctors and Wexford required to find that they were state actors. … The undisputed facts [did] not allow a reasonable inference that these doctors acted under color of state law when they took the referral from Wexford." *Id*. at 798.

The same result obtains here. As his sole argument for why Ranzer is a state actor, Woods maintains that Ranzer's employer, UIMC, has a contract with Wexford to provide medical treatment for inmates. Doc. 155 at ¶¶ 48, 50. But as noted above, Woods fails to support that factual submission with record evidence. Woods presents no other ground for finding that Ranzer acted under color of state law, thereby forfeiting any such argument. *See Gates*, 916 F.3d at 641 ("The district court was not required to address a claim or theory that plaintiff did not assert [in opposition to summary judgment]."); *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). His § 1983 claims against Ranzer therefore fail.

## Conclusion

Ranzer's summary judgment motion is granted.

July 30, 2020

_____
United States District Judge