UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNIE WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 6828 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| GHALIAH OBAISI, Independent Executor of the Estate of Saleh Obaisi, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Johnnie Woods, an Illinois prisoner, brought this *pro se* suit against Dr. Saleh Obaisi and Dr. Matthew Ranzer under 42 U.S.C. § 1983, claiming deliberate indifference to his serious medical needs during his confinement at Stateville Correctional Center. Doc. 53. (After Obaisi's death, the court substituted his estate's executor as defendant. Doc. 33.) The court granted summary judgment to Obaisi on exhaustion grounds, except for Woods's claims that Obaisi was deliberately indifferent in denying his request for a second opinion following plastic surgery on his heel and in directing that his ACE bandages be removed. Docs. 162-163 (reported at 2020 WL 1467402 (N.D. Ill. Mar. 26, 2020)). The court later granted summary judgment to Ranzer on the ground that he was not a state actor for purposes of § 1983. Docs. 182-183 (reported at 2020 WL 4365643 (N.D. Ill. July 30, 2020)). Obaisi now moves for summary judgment on the merits of the remaining claims against him. Doc. 175. The motion is granted.

### Background

Consistent with the Local Rules then in effect, Obaisi filed a Local Rule 56.1(a)(3) statement of undisputed facts and a Local Rule 56.2 Notice along with his summary judgment motion. Docs. 177-178. Local Rule 56.1(b)(3)(B) required Woods to file "a concise response to

1

[Obaisi's] statement … contain[ing] … a response to each numbered paragraph in [Obaisi's] statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B) (2020). Although Woods's Local Rule 56.1(b)(3)(B) response does not respond to every paragraph of Obaisi's Local Rule 56.1(a)(3) statement, the response contains numbered paragraphs that reference and correspond to Obaisi's statement, Doc. 184, so the court will consider the response to the extent it is adequately supported by specific references to the record. In those instances where Obaisi's factual assertions are properly supported by the record material he cites and not properly disputed by Woods, the court will deem the assertions undisputed. *See* N.D. Ill. L.R. 56.1(b)(3)(C) (2020) ("[A]ll material facts set forth in the [Local Rule 56.1(a)(3)] statement … will be deemed to be admitted unless controverted by the statement of the opposing party."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("The non-moving party's failure … to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party as undisputed."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation.").

Because Woods is *pro se*, the court—as did Obaisi—will construe his declaration, Doc. 185, to be a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Johnson v. City of Chicago*, 2016 WL 5341810, at *2 (N.D. Ill. Sept. 23, 2016). The court will consider Obaisi's response to the declaration, Doc. 189, but notes that Obaisi improperly objected to numerous paragraphs of the declaration on the ground that Woods provided "no further evidence" to

support his averments or that the averments are not reflected in medical notes. Woods's declaration is evidence, and so long as his averments reference matters within his personal knowledge, they are evidence that the court must consider at summary judgment. *See Payne v. Pauley,* 337 F.3d 767, 773 (7th Cir. 2003) (holding that "a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts"); *Dobbey v. Liping Zhang*, 608 F. App'x 406, 409 (7th Cir. 2015) (holding that a party's descriptions of conversations in a summary judgment affidavit were "not impermissibly self-serving because they are both based on his personal knowledge and they are plausible").

The court recites the facts as favorably to Woods as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

Woods is an Illinois prisoner who at all relevant times was incarcerated at Stateville. Doc. 177 at ¶¶ 1, 5. Obaisi was a licensed physician employed by Wexford Health Sources, Inc. as Stateville's medical director. *Id*. at ¶ 2.

On October 29, 2015, Obaisi referred Woods to UIC Hospital to consult with a plastic surgeon due to a buildup of scar tissue on the back of his left heel. *Id*. at ¶ 18. On May 6, 2016, Woods had a consulting appointment at UIC with Ranzer, a plastic surgeon, who recommended surgery. *Id*. at ¶ 19. On May 25, Wexford approved the surgery. *Id*. at ¶ 20. On June 9, Woods consented to and underwent surgery, which included an excision of scar tissue and adjacent tissue transfer. *Id*. at ¶¶ 21-22. Woods returned to Stateville that evening, wearing a support splint on his left leg. *Id*. at ¶ 23.

The next morning, Obaisi admitted Woods to the Stateville infirmary. *Id*. at ¶ 24. Obaisi prescribed Tylenol-Codeine #3, a prescription pain relief drug. *Ibid*. Obaisi noted in his records that Woods's left leg was non-weight bearing, and he was given two crutches. *Ibid*. Obaisi also wrote: "keep dressing dry" and "don't change." *Ibid*. During his stay in the infirmary, Woods wore the dressings and bandages applied by Ranzer; was routinely seen, examined, and treated by medical staff about every three hours; and received Tylenol-Codeine #3 for pain. *Id.* at ¶¶ 25-27. Medical staff did not alter or remove Woods's cast during this time. *Id*. at ¶ 27. On June 14, Woods was discharged from the infirmary, and medical staff noted he still had wraps on his leg and retained both his crutches. *Id*. at ¶ 26.

On June 17, Woods saw Ranzer at UIC for a post-operative visit. *Id*. at ¶ 28. Before the visit, Woods had thought that the June 9 surgery was successful. Doc. 184 at ¶ 14. When Ranzer cut away the soft cast, however, Woods learned that Ranzer had not been able to close the wound and that his heel bone was exposed. *Ibid*.; Doc. 185 at ¶ 3. In his report to IDOC staff explaining how to treat Woods post-operatively, Ranzer wrote that the wound was "healing well; continue non-weight bearing; dressing changed in clinic; leave dressing alone; follow up in 1 week for dressing change; [Woods] will need additional surgery in a few weeks." Doc. 177 at ¶ 28. Woods filed a grievance that day complaining of the exposed heel bone and seeking a second opinion or a different surgeon. Doc. 185 at ¶ 4.

At a June 20 appointment, Woods told Obaisi that he had learned from Ranzer on June 17 that he had a "bone exposed." Doc. 177 at ¶ 30; Doc. 185 at ¶ 5. In response, Obaisi had a nurse remove Woods's dressing so that Obaisi could examine the heel, even though Woods told Obaisi that Ranzer had said that nobody should remove the dressing. Doc. 185 at ¶ 5. Obaisi changed Woods's dressing and noted in his records that Woods should follow up as needed and that his

4

dressing should not be changed again. Doc. 177 at ¶ 30. Obaisi also completed a form so that Woods could again follow up with Ranzer. *Id*. at ¶ 31. Woods told Obaisi that he wanted a second opinion or different surgeon for the follow-up surgery. Doc. 185 at ¶ 5. A nurse confiscated the ACE bandages that had been covering Woods's wound, deeming them contraband, and sealed the wound with gauze and tape. *Id*. at ¶ 6.

The next day, June 21, Woods wrote a grievance describing his swelling and pain and asking that the ACE bandages be returned. *Id*. at ¶ 7. The grievance counselor responded that Obaisi said that Woods should, or usually would, be given a Kling bandage to replace the ACE bandages. *Ibid*. The Kling bandage was never provided. Doc. 184 at ¶¶ 21-22.

On June 27, Obaisi saw Woods again and noted that his condition had not changed. Doc. 177 at ¶ 32. Obaisi prescribed more Tylenol-Codeine #3. *Ibid*.

On June 30, Woods saw a nurse and asked that his dressing be changed because he "took a shower and [his] dressings got all wet." *Id*. at ¶ 33. Nursing staff reminded Woods to leave his dressing alone, and Woods responded, "I took off the dressing because it was all wet," and stated that he had wrapped his exposed left heel in a shirt. *Ibid*. Nursing staff told Woods to wash up in the sink—rather than take showers—so that he would not get his dressing wet. *Ibid*. Woods refused, saying that he would obtain an order allowing dressing changes. *Ibid*. Nursing staff applied a new dressing. *Id*. at ¶ 34. Woods refused an offer of pain medication. *Ibid*.

On July 1, Woods saw Ranzer at UIC for a second post-operative visit. *Id*. at ¶ 35. Woods told Ranzer that he had been experiencing more pain and swelling since the ACE bandages were confiscated. Doc. 185 at ¶ 9. In response, Ranzer recommended a Kerlix wrap, wet-to-dry dressings to the heel twice daily, and Tylenol for pain. Doc. 177 at ¶ 35. Ranzer noted in his records that Woods presented with a "clean appearing left heel wound." *Ibid*.

5

When Woods returned to Stateville, he informed a nurse that "[UIC] gave me an order for dressing changes." *Id.* at ¶ 36. The nurse indicated in Woods's records the need to apply "wet to dry dressing with Kerlix wrap to [left] heel BID (twice a day) for 1 week." *Ibid.* But no Stateville official provided Woods with Kerlix wrap until after his second surgery the following month. Doc. 184 at ¶ 23. Obaisi ignored Ranzer's recommendation concerning Kerlix wrap even though Woods told Obaisi that he could not sleep due to pain and swelling in his foot. Doc. 185 at ¶ 22.

On July 5, Obaisi completed a referral form for Woods to have another follow-up visit with Ranzer and prescribed Tylenol-Codeine #3. *Id.* at ¶ 37.

On July 22, Woods had his third post-operative visit with Ranzer. *Id.* at ¶ 38. Ranzer documented a surgical plan for a "reverse sural artery flap" procedure. *Ibid.* Woods agreed to Ranzer's performing that surgery. *Id.* at ¶ 39. When Woods returned to Stateville, a nurse noted that he exhibited no signs of distress and had no complaints. *Ibid.* The nurse noted that Woods would continue receiving wet to dry dressing changes twice per day. *Ibid.*

On July 26, Woods saw Obaisi for a follow-up appointment. *Id.* at ¶ 40. Obaisi noted that there were no acute changes and noted Ranzer's recommendation of a second surgery to close the heel wound. *Ibid.* Wexford authorized Woods for a follow-up surgical procedure at UIC. *Id.* at ¶¶ 41, 68-69.

On August 11, Woods was taken to UIC and signed a consent form for the "reverse sural artery flap procedure." Doc. 185 at ¶ 11. Ranzer instead performed a skin graft using donor skin from Woods's groin. Doc. 177 at ¶ 42. According to Woods, he never consented to the skin graft, and he did not learn until he was in recovery at UIC that a different surgery had been performed. Doc. 185 at ¶ 12.

6

When Woods returned to Stateville on August 16, he initially objected to staying at the infirmary, and he told a nurse that if Obaisi had procured a second opinion, he would not have received a surgery that he did not ask for. *Id.* at ¶ 13. That day, Obaisi issued Woods a slow walk permit, a medical lay in, and a left posterior foot splint wrapped in an ACE wrap for two weeks. Doc. 177 at ¶ 44. Over the next several months, Woods received further post-operative care. *Id*. at ¶¶ 45-54. Woods's skin graft took well. *Id*. at ¶ 51.

From October 2016 through September 2017, when he was transferred to a different prison, Woods periodically complained of numbness in his foot, but he denied pain. *Id*. at ¶¶ 54, 56-57. In response, Obaisi approved Woods for further follow-up with Ranzer at UIC. *Id*. at ¶ 55. Woods saw Ranzer on May 19, 2017, and on May 23, Woods informed a Stateville physician's assistant that he declined any further corrective surgery. *Id*. at ¶¶ 58-59.

At present, Woods's left foot goes numb daily, forcing him to either drag or carry it, but he does not suffer pain. Doc. 185 at ¶¶ 19, 23. He did not experience numbness prior to his first surgery with Ranzer. *Id*. at ¶ 23. He takes Pamelor and Cymbalta for the nerve damage. *Ibid*. Until his transfer to a different facility, Woods continued to hold his prison job at Stateville where he swept, mopped, and cleaned the health care unit. Doc. 177 at ¶ 12. He is able to play sports, including basketball, during which he "walks fast." *Id*. at ¶ 11.

## Discussion

Woods alleges that Obaisi was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. As noted, Woods's remaining claims are that Obaisi was deliberately indifferent in denying his request for a second opinion before any follow-up surgery and in directing that his ACE bandages be removed. 2020 WL 1467402, at *3.

"If prison medical staff exhibit deliberate indifference to an inmate's serious medical condition, they subject h[im] to unnecessary and wanton pain and suffering and thereby run afoul of the Eight Amendment." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). "To establish an Eighth Amendment claim for deliberate indifference to serious medical needs, … [t]he plaintiff must prove that he suffered from (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019) (internal quotation marks omitted). Conceding that Woods suffered from a serious medical issue, Obaisi argues only that he was not deliberately indifferent. Doc. 175 at ¶¶ 5-6.

"To establish deliberate indifference, a plaintiff must show that the defendant '*actually* knew of and disregarded a substantial risk of harm.'" *Mitchell*, 895 F.3d at 498 (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc)); *see also Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017) ("A failure to act in the face of an obvious risk of which the official *should* have known is insufficient to make out a claim."). Whether a defendant acts with deliberate indifference "is measured subjectively: The defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). "By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment." *Ibid*. (quoting *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016)). That said, "if a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it." *Petties*, 836 F.3d at 729. In that situation, a "medical professional's treatment decision must be such a substantial

departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Ibid*. (quotation marks omitted). The court "look[s] at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Id*. at 728.

No reasonable juror could find that Obaisi's decision to remove Woods's dressing on June 20, 2016 rose to the level of deliberate indifference. Woods told Obaisi that day that his bone was exposed, and no evidence suggests that Obaisi removed the dressing for any reason other than to conduct a visual inspection in light of that startling revelation. Whether or not Obaisi's decision was prudent given Ranzer's notation to "leave dressing alone"—and it might have been strange had Obaisi *not* inspected Woods's heel under the circumstances—it cannot be said that the decision was devoid of professional medical judgment. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) ("To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment."). Moreover, Woods suffered no infection or other complications due to Obaisi's removal of the dressing. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (holding that a plaintiff must show that the alleged deliberate indifference caused him to suffer some injury). Indeed, Woods removed his own dressing a few days later to take a shower and refused to heed nurses' warnings to keep it dry.

Woods also argues that he suffered unnecessary pain after June 20 because his ACE bandages were not replaced with a Kerlix wrap until after his second surgery in August. Obaisi's medical notes do not reference Woods's requests for a Kerlix wrap or explain the basis for the denial. But assuming, as the court must on summary judgment, that Woods made the request, Obaisi's denial of a Kerlix wrap does not reflect a treatment decision that is so obviously

9

erroneous that deliberate indifference can be established without evidence concerning the need for that specific type of bandaging. *See Knight v. Grossman*, 942 F.3d 336, 341 (7th Cir. 2019) ("[E]xpert testimony is not always necessary. Here, however, none of the alleged errors are so obvious that a lay juror could assess whether [the plaintiff] carried his burden in challenging [the provider's] treatment."); *Miller v. Wexford Health Sources, Inc.*, 812 F. App'x 371, 374-75 (7th Cir. 2020) (affirming summary judgment where there was no evidence that the doctor's decision to refuse surgery departed from accepted standards, even though the inmate's condition worsened and eventually required surgery).

In fact, "the totality of … medical care," *Petties*, 836 F.3d at 728, that Obaisi provided Woods during the period he went without a Kerlix wrap negates any conceivable inference of deliberate indifference. Obaisi treated Woods's pain by ordering a narcotic on several occasions, made other dressing changes in accordance with Ranzer's directives, and promptly procured Wexford's approval for a second surgery. Given this treatment, no reasonable jury could find that Obaisi exhibited the deliberate indifference necessary to establish an Eighth Amendment violation. *See Wilson v. Adams,* 901 F.3d 816, 821-22 (7th Cir. 2018) (affirming summary judgment where the "totality" of care showed that medical staff paid proper attention to the inmate's pain); *Heard v. Chapman*, 759 F. App'x 495, 499 (7th Cir. 2019) (holding that a doctor who failed to provide gauze to an inmate after oral surgery, leading to a painful dry socket, was not deliberately indifferent where the totality of care—including ordering x-rays, submitting a request for a biopsy, and treating the dry socket when it was brought to his attention—showed sufficient attentiveness to the inmate's condition); *Kyles v. Williams*, 679 F. App'x 497, 499-500 (7th Cir. 2017) (affirming summary judgment for prison medical professionals because a series

of appointments and reasonable attention to the prisoner's knee issues demonstrated that the providers did not consciously disregard a serious risk of harm).

While Woods emphasizes that Obaisi's refusal to provide Kerlix wraps did not comply with Ranzer's July 1 recommendation, "[d]isagreement … between two medical professionals … about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) ("We routinely have rejected claims … where a prisoner's claim is based on a preference for one medication over another unless there is evidence of a substantial departure from acceptable professional judgment."); *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (rejecting the prisoner's argument that the prison doctor's choice of pain medication demonstrated deliberate indifference simply because the prisoner's own doctor recommended a different medication). Considering the overall treatment that Woods received, there indisputably was no deliberate indifference as to the type of wrap or dressing on his heel.

Woods's final contention that Obaisi was deliberately indifferent in denying him a second opinion before the second surgery is a non-starter. Woods was not entitled to demand particular treatment of his choosing. *See Holloway*, 700 F.3d at 1073 (holding that inmates are "not entitled to receive unqualified access to healthcare") (quotation marks omitted); *Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008) ("[T]he Constitution is not a medical code that mandates specific medical treatment.") (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). That principle easily encompasses a demand for a second opinion. *See Schmidt v. Bowens*, 2020 WL 6585881, at *2 (E.D. Wis. Nov. 10, 2020) ("Although Plaintiff would have liked to have a second opinion on his scabies, he was not entitled to one and Bowens' denial was

11

not a constitutional violation under the Eighth Amendment."). At least four physicians, including a specialist, either directly treated Woods or reviewed his case. Doc. 177 at ¶¶ 67-70. The Eighth Amendment did not entitle him to yet another consultation.

## Conclusion

Obaisi's summary judgment motion is granted. Judgment will be entered in favor of Ranzer and Obaisi and against Woods.

If Woods wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Woods seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* in this court. *See* Fed. R. App. P. 24(a)(1). Woods need not bring a motion to reconsider this court's ruling to preserve his appellate rights. However, if Woods wishes the court to reconsider its judgment, he may file a motion under Civil Rule 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of judgment. *See* Fed. R. Civ. P. 59(e). The time to file a Rule 59(e) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of judgment. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

March 24, 2021

                                                   United States District Judge